Argued and submitted February 18, affirmed April 6, reconsideration denied May 14, petition for review denied June 16, 1981 (291 Or 118)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOSE ANTONIO ECHEVERRIA,
*Appellant.*

### (No. 3995, CA 18846)

626 P2d 897

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals from the judgment entered on his jury trial conviction for First Degree Burglary. The sole question on appeal is whether the trial court erred in receiving into evidence, over defendant's hearsay objection, a list of stolen property which the deceased burglary victim had prepared for the police. We affirm.

Mrs. Thelma McKean was a victim of a burglary in her home in Moro, Oregon, on November 14, 1979. Several officers testified to their personal knowledge that Mrs. McKean's home had in fact been burglarized. The issue at trial was whether defendant had committed the burglary.

Defendant denied any knowledge of the burglary but admitted that he had been in the area at the time. He acknowledged that he had been stopped for a traffic violation in Hood River on November 12 and that he had stayed at the Tall Winds Motel in Morrow on November 14. He stated that he had been driving the two-tone Chevrolet with California license plates which had been shown on a registration card at that motel. A witness testified to having seen a car of that description leaving Mrs. McKean's driveway on the afternoon of November 14. An investigating police officer found a Tall Winds Motel business card in a pile of debris left in Mrs. McKean's yard on November 14, and a fingerprint, later shown to be defendant's, was found on a piece of paper removed from the same pile.

The stolen property list in question was compiled by Mrs. McKean three days after the burglary and in response to a request by an investigating officer. The list was two pages long, very detailed and included the following descriptions:

"Elgin-yellow gold pocket watch, second hand on face is at 3 o'clock, belonged to my husband's grandfather, * * * pair of Alaskan Jade earrings for pierced ears, yellow gold post, value of $15."

A watch and an earring answering these descriptions were found in defendant's possession. Defendant said that he had purchased the watch in Mexico.

Mrs. McKean died of natural causes four months after the burglary and therefore was not available to testify at trial. However, her daughters testified that the

watch with the second hand frozen at "3 o'clock" had belonged to their grandfather and that the earrings were identical to earrings Mrs. McKean had purchased on a trip to Alaska. Witness O. O. Martin of Anchorage, Alaska, identified the earrings as some he had made, but said they were a stock item, made in large quantities each year. A jeweler in The Dalles examined the watch and identified it as a gold Elgin with a broken balance staff.

At trial, the state attempted to introduce the list prepared by Mrs. McKean on the ground that it was admissible hearsay as a business record kept by the investigating officer in the regular course of business. The court rejected this basis but admitted the list as circumstantial evidence that a crime had been committed and as direct evidence under a "general" exception to the hearsay rule.

■　　We agree with the defendant that our focus on appeal must be on the hearsay issue alone. The state did not attempt to introduce the list as circumstantial evidence of the crime but offered the list to prove the truth of the statements contained therein. There was no special instruction to the jury to regard the list only as circumstantial evidence, and it therefore could regard it as evidence that the victim had the property in her possession on the day of the burglary.

■　　The list does not fit under any of the traditional exceptions to the hearsay rule. The trial judge was correct in rejecting the state's argument that it could come in under a business records exception. In writing the list, Mrs. McKean did not act routinely, under a duty of accuracy, as in the regular course of a business, and incorporation of the list into the police investigation reports did not transform it into a "business record." *See Lepire v. Motor Vehicles Division,* 47 Or App 67, 613 P2d 1084 (1980). However, the Oregon Supreme Court has recognized that hearsay not readily classifiable under any of the established exceptions to the rule may nonetheless be received if the out-of-court statements are necessary and have about them an "aura of trustworthiness." *Timber Access Ind. v. U. S. Plywood,* 263 Or 509, 519, 503 P2d 482 (1972). This modern approach to hearsay, embodied in the federal rules and incorporated in the Proposed Oregon Evidence Code, is based on the rationale that there are

"* * * certain exceptional circumstances when evidence, which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions, and to have a high degree of probativeness and necessity, could properly be admissible." Proposed Oregon Evidence Code, Report of the Legislative Interim Committee on Judiciary, December, 1980, at 176 *and see* section 64, Rule 803(24), and section 65, Rule 804(3)(e).

■ ■ We recognize that such circumstantial guarantees of reliability must be especially strong in a criminal case where defendant has a constitutional and statutory right to a jury trial and confrontation of witnesses. ORS 136.002; ORS 136.420; Article I, §§ 10, 11, Oregon Constitution; U. S. Constitutional Amendments 5, 6, and 14. However, we think that the facts of the present case constitute a showing of the necessary "aura of trustworthiness" to justify admission of the list. As the trial judge observed, Mrs. McKean had no reason to falsify the list. On the contrary, she was motivated, except perhaps for the values she attached to the items, to give as accurate a list as possible to aid the police in locating her property. Further, she made the list in response to a request from the investigating officer; ORS 162.375 makes it is a crime to give false reports to law enforcement agencies. *Cf. State v. Montigue,* 288 Or 359, 367, 605 P2d 656 (1980). The reliability of the evidence is further enhanced by the detailed nature of the descriptions and the testimony of Mrs. McKean's daughters that Mrs. McKean had indeed owned property of the kind described in the list. Finally, the list was not compiled for trial but was written shortly after the event and therefore was more likely than not to be accurate at the time it was made.

■ Defendant argues that this court has neither the authority nor necessity to expand the general hearsay exception "this far." We think that *Timber Access* clearly provides authority for admitting the list, especially in view of the fact that there are more circumstantial guarantees of reliability present here than existed in that case. *See Timber Access Ind. v. U. S. Plywood, supra,* 263 Or at 519-520. As to the second prong of defendant's argument, defendant confuses "necessity" with "probative value" in arguing that, because other evidence linked defendant to the crime,

admission of the list was "unnecessary." In *State v. Derry-berry,* 270 Or 482, 528 P2d 1034 (1974), the Supreme Court stated that one requirement for most hearsay exceptions is,

> "some necessity for the use of the out-of-court statement, usually as a result of the unavailability of the witness (Examples: Dying declarations, declarations against interest and former testimony)." 270 Or at 488.

As used in this context, "necessity" means only that the declarant be unavailable to testify and not that no other evidence be available to establish the material fact in question. Therefore, defendant's argument should not be that the evidence was "unnecessary" but that it was of insufficient probative value to justify the use of hearsay. We agree with the reasoning in the Proposed Evidence Code that the hearsay statements should not be admitted unless it is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Proposed Oregon Evidence Code, *supra,* section 64, Rule 803(24); section 65, Rule 804(3)(e). However, this requirement was clearly met here, because no other evidence established with certainty that the property in question was actually in the victim's residence on the day of the burglary.

Affirmed.