Argued and submitted September 26, reversed and remanded December 19, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# LEON WALLACE HICKAM,
*Appellant.*

(10-83-00249, 10-83-00250; CA A30635 (Control), A30636)
(Cases Consolidated)

692 P2d 672

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, and Helen I. Bloch, Deputy Public Defender, Salem.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals his conviction on two counts of sexual abuse in the first degree, contending that the trial court erred in refusing to grant his motion to suppress certain statements, because: (1) he was in custody when the statements were made and therefore entitled to *Miranda* warnings before the time when they were given, and (2) the statements were involuntary. He also contends that the court erred in admitting evidence of his notice of intent to rely on lack of responsibility and lack of intent defenses, which were withdrawn before trial. Because we agree with the latter contention, we reverse and remand.

On December 4, 1982, Springfield police officer Antoine interviewed the six-year-old victim regarding an allegation that defendant had sexually abused him. The victim told Antoine that defendant had made sexual contact with him on several occasions. On December 20, 1982, at approximately 9 a.m., Antoine stopped defendant, who was walking down the street, and asked him to accompany him to the police station. Antoine then was aware that defendant is mentally retarded. The officer was driving an unmarked car and was not in uniform at the time, but he identified himself and showed defendant his badge. Antoine told defendant that there was a problem they needed to discuss, but that he was not required to accompany him to the station. Defendant testified that he agreed to go, because he was curious about what the officer wanted, but that he did not believe that he had to accompany the officer.

On arriving at the station, Antoine took defendant to a six-foot square windowless room containing a table and two chairs and shut the door. Antoine explained the nature of the investigation and asked some questions. Defendant admitted having touched the child's penis but claimed that it happened only a few times and at the child's instigation. Antoine then left the interview room for several minutes, closing the door behind him. When he returned, he gave defendant a simplified version of the *Miranda* rights.[1] After defendant indicated that

---

[1] The officer testified that he told defendant:

"You don't have to talk to me, but if you do talk to me, what you tell me can be used in court against you.

he understood those rights, Antoine asked more questions. Defendant again admitted to having touched the child's penis, stating that the child had asked him to do it. He also stated that he knew the touching was wrong and that he would not have done it had a police officer or the child's mother been present. When Antoine asked him to make a tape-recorded statement about what had happened, however, defendant refused. The officer testified that, at that point, he decided to contact defendant's sister. Although defendant was very reluctant to disclose her name, he eventually did. After Antoine contacted her, defendant's sister and her husband arrived at the police station. Defendant received a citation to appear in court and left with his relatives. The entire incident lasted approximately one hour.

At the hearing on defendant's motion to suppress, the officer testified that defendant was not restrained in any way and that, had he asked to leave, he would have been allowed to do so.[2] He also stated that defendant was cooperative and responded appropriately to the questions asked. Defendant presented evidence that he has been retarded since birth, has completed schooling only through the sixth grade and is illiterate. His sister testified that, in her opinion, he functions at the level of an eight to ten year old. Defendant testified that he did not understand that he was entitled to the presence of an attorney during questioning, but that, because of television, he was aware that a tape-recorded statement could be used against him. He further stated that Antoine refused to allow him to call his sister and that he did not feel that he was free to leave the police station.

At the close of the suppression hearing, the trial court found that defendant's statements were involuntary and

---

"You can have a lawyer here while we are talking. * * *

"If you can't afford an attorney, one will be appointed to represent you."

Because we conclude that the officer was not required to administer *Miranda* warnings, we do not address defendant's argument that the warnings given were "inadequate."

[2] The officer testified that, if the situation were as presented by the victim, defendant would have been guilty of sodomy. Without some statement from defendant, however, he would have asked that the matter be submitted to the grand jury instead of charging him with any crime.

granted his motion to suppress. On reconsideration of that ruling, however, the court held that "in spite of the fact that defendant is significantly retarded, the record does not indicate the use of coercion by police witnesses and therefore the statements are deemed voluntary and as a result admissible."

Before trial, defendant filed notice of his intent to rely on lack of responsibility and lack of intent defenses, pursuant to ORS 161.300[3] and 161.309.[4] After examination by a court-appointed psychiatrist six months before trial, however, defendant withdrew those defenses. During trial, the court allowed the state to introduce evidence showing defendant's notice of intent to rely on the above-mentioned defenses, his psychiatric examination and his withdrawal of those defenses.

In his first assignment, defendant contends that the trial court erred in refusing to grant his motion to suppress, because from the onset of questioning he was "in custody" and entitled to *Miranda* warnings. In *State v. Paz,* 31 Or App 851, 860-61, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1977), we reviewed the relevant case law and noted that courts have considered at least three factors in determining whether interrogations conducted by police at police stations are custodial: (1) whether the defendant could have left the scene of the investigation voluntarily, (2) whether he was questioned as a suspect or merely as a witness, and (3) whether he freely and voluntarily accompanied the police to the place of questioning. Although the circumstances of each case influence a determination of whether police questioning amounts to "custodial interrogation," the United States Supreme Court has recently emphasized that "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 US 1121, 103 S Ct 3517, 77 L

---

[3] ORS 161.300 provides:

"Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether he did or did not have the intent which is an element of the crime."

[4] ORS 161.309(2) provides:

"The defendant may not introduce in the case in chief expert testimony regarding partial responsibility under ORS 161.300 unless the defendant gives notice of intent to do so in the manner provided in subsection (3) of this section."

Ed 2d 1275, 1279 (1983), quoting *Oregon v. Mathiason,* 429 US
492, 495, 97 S Ct 711, 50 L Ed 2d 714 (1977).

In *Beheler,* the Court held that a 30-minute interview
with a suspect who voluntarily agreed to accompany police to
the station house and was told that he was not under arrest did
not amount to "custodial interrogation" within the meaning
of *Miranda.* Discounting the emphasis the court below placed
on the fact that the defendant was questioned shortly after the
crime was committed, had been drinking earlier in the day and
was emotionally distraught, the Court reiterated that

> "a noncustodial situation is not converted to one in which
> *Miranda* applies simply because a reviewing court concludes
> that, even in the absence of any formal arrest or restraint on
> freedom of movement, the questioning took place in a 'coer-
> cive environment.' " 463 US at 1279, quoting *Oregon v.
> Mathiason, supra,* 429 US at 495.

■     Applying those principles to the case at hand, we
conclude that the defendant was not "in custody" during the
station house questioning and, therefore, was not entitled to
*Miranda* warnings. The testimony at the hearing established
that defendant had voluntarily accompanied the officer to the
police station, even after being told that he was not required to
do so. His detention was brief; the entire incident took place
within an hour, including the time in which it took his sister to
arrive at the police station. Although it appears that defen-
dant was a suspect at the time of the questioning, there is
nothing in the record to suggest that his freedom of movement
was restrained in any way or that he was justified in feeling
that he was not free to leave the station. In any event, the trial
court was free to disbelieve defendant's testimony on that
point. Although defendant's mental retardation may have
diminished his ability to evaluate the situation, the trial court
considered that factor and nevertheless concluded that defen-
dant's statements should not be suppressed. Implicit in that
conclusion is a finding that defendant was not "in custody."

A different result is not compelled by *State v. White,*
297 Or 302, 685 P2d 983 (1984), if it was decided under the
state constitution, that

> "* * * interrogation is custodial under *Miranda* if the
> police officer actually knows that he would not let the person
> being questioned leave or if the officer should be aware that
> the totality of circumstances in which the interrogation takes

place is such that the person questioned would reasonably believe he is not free to leave." 297 Or at 310.

In formulating that test, the court was attempting to apply its holding in *State v. Roberti,* 293 Or 236, 646 P2d 1341, *vacated and remanded sub nom Oregon v. Roberti,* 468 US ___, 104 S Ct 3574, 82 L Ed 2d 873 (1984). *Roberti* was vacated in the light of *Berkemer v. McCarty,* 468 US ___, 104 S Ct 3138, 82 L Ed 2d 317 (1984), and we have no indication yet of what the Oregon Supreme Court will do on remand. It is at least questionable whether *State v. White, supra,* remains good law. Even assuming that factual distinctions between *Berkemer* and *White* assure the latter's continued viability, we hold that defendant was not "in custody" under *White.*

We turn now to defendant's contention that the trial court erred in concluding that the statements made to the officer were voluntary and, as a result, admissible. Although we are bound by the trial court's determination of historical facts, we must consider whether the facts presented support a conclusion of voluntariness. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). Statements are deemed involuntary if the totality of the circumstances indicates that a defendant's will was overborne by physical or psychological pressure. *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *State v. Quinn,* 290 Or 383, 398, 623 P2d 630 (1981). If circumstances such as incommunicado custody, extended questioning, deception, a defendant's mental limitations or other psychological factors are sufficient in their totality to overcome defendant's will to resist, the resulting statements are considered involuntary, regardless of whether physical force was employed. *State v. Quinn, supra,* 290 Or at 398.

Defendant's argument appears to be that, because he is mentally retarded, his will to resist was overcome by the mere fact of the questioning itself. The trial court found that, although defendant is "significantly retarded," there was no coercion by the police in obtaining his statements. Implicit also in the conclusion of voluntariness is the finding that, despite his retardation, defendant was able to comprehend the questions asked and to respond as he saw fit. The officer testified that defendant was cooperative, appeared to understand the nature of the investigation and responded appropriately to the questions asked. Viewing the totality of the

circumstances, we conclude that the facts in this case are adequate to support the trial court's conclusion of voluntariness. The statements were admissible.

■ In his second assignment, defendant contends that the trial court erred in allowing the state to introduce (1) his notice of intent to rely on lack of responsibility and lack of intent defenses pursuant to ORS 161.300 and 161.309, (2) his notice of withdrawal of those defenses and (3) the intervening court order requiring psychiatric evaluation of defendant at the state's expense. The sole issue is whether the trial court abused its discretion in admitting that evidence. The proper standard for evaluating whether there was an abuse of discretion is set forth in *State v. Madison,* 290 Or 573, 579, 624 P2d 599 (1981):

> " '* * * If (the trial judge) finds the evidence to have no probative value, he must exclude it. If, on the other hand, it does tend to establish a fact in issue, and no contrary considerations are present in the particular case, the evidence must be admitted. Between these two extremes, however, is an area in which further judgment must be exercised. If the evidence has some probative value, but also presents difficulties such as those mentioned above, the judge must determine whether the value of the evidence outweighs, or is outweighed by, the offsetting considerations. We sometimes call the exercise of this kind of judgment "discretion." Its exercise requires the judge to weigh the value of the evidence in light of all the circumstances of the particular case, and his conclusion, if it is reasonable, will not be disturbed on appeal. * * * We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether his ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer.' " (Quoting *Carter v. Moberly,* 263 Or 193, 200-01, 501 P2d 1276 (1972)).

■ Defendant maintains that the evidence should have been excluded under OEC 403,[5] because its relevancy was

---

[5] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

outweighed by the danger of unfair prejudice and that its admission violated his constitutional right against compulsory self-incrimination. We consider the statutory claim first. "Unfair prejudice" in the context of OEC 403 has been defined by the Legislative Commentary to the code as "an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one." In determining whether the probative value of evidence is outweighed by its prejudicial impact, three factors must be considered: (1) the need for the evidence; (2) its persuasiveness; and (3) its inflammatory effect on the jury. *State v. Ritchie,* 50 Or App 257, 260, 622 P2d 768 (1981).

The voluntariness issue went to the jury. The state contends that the admission of the evidence did not unfairly prejudice defendant, because it was necessary to offset his claim that because he was mentally retarded he could not understand and voluntarily respond to police questioning. Even assuming that the evidence was relevant to show that defendant had the capacity to make the statements to the police,[6] however, there were other means whereby the state could demonstrate defendant's mental acumen. For instance, the state had the opportunity to examine defendant, his sister and the investigating officer regarding defendant's level of comprehension. Thus, the introduction of the documents was not "necessary." Neither was the evidence particularly persuasive, because the lack of responsibility defense could have been entered and withdrawn for purely tactical reasons. Finally, the evidence implicitly suggests that defendant was prepared to argue that he was absolved from guilt, not because he was innocent, but because he lacked the ability to understand the nature of his actions. At trial, defendant contended that he did not commit the acts alleged and denied that he had made the statements attributed to him by Antoine. Although the reason for the withdrawal of the defenses might have been defendant's counsel's belief that his innocence was genuine and more easily shown than a lack of responsibility, in considering the evidence presented the jury could well have convicted defendant on an improper basis. For those reasons, we conclude that the court's decision to allow the introduction of the evidence was beyond the limits of discretion. Defendant

---

[6] Defendant does not argue that the evidence was irrelevant.

is entitled to a new trial. Because we conclude that the evidence should have been excluded on the basis of OEC 403, it is unnecessary to reach defendant's constitutional claim.[7]

Reversed and remanded for a new trial.

---

[7] Our disposition of the case also makes it unnecessary for us to consider whether the trial court erred in allowing the state to cross-examine defendant and his sister regarding the psychiatric evaluation and to comment on the evidence in closing argument.