Argued and submitted February 29, 1984, affirmed March 13, reconsideration denied
April 19, petition for review allowed by opinion August 27, 1985
See 299 Or 729, 705 P2d 196 (1985)

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY LAWRENCE SWADER,
*Appellant.*

(10-82-06460; CA A28791)

697 P2d 557

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals his conviction for sodomy in the first degree, ORS 163.405, claiming that: (1) his confession was made involuntarily and without the required *Miranda* warnings; (2) the court erred in admitting evidence of the victim's statements to his father; and (3) the state failed to present evidence adequate to corroborate defendant's confession, as required by ORS 136.425(1). We affirm.

The victim, a boy, was three years old at the time of the offense. Defendant's wife had provided care for the child in defendant's home on several occasions before the offense. On July 22, 1982, the child told his father of the alleged sexual contact with defendant. The child's father immediately contacted the Springfield police. The police interviewed the child using anatomically correct dolls, and the child enacted the sexual contact with defendant showing the officer that defendant had placed his penis in the child's mouth.

The following day the officer telephoned defendant and asked him to come to the Springfield police station. Defendant complied. He was taken into an unlocked, windowless interrogation room in the interior portion of the station with no public access. The officer explained the accusation to him. He was not given *Miranda* warnings, nor was he told that he was or was not free to leave at that time. Defendant denied the contact. The officer explained that the victim had been very specific and that normally children of that age do not manufacture accusations like that. The officer said he wanted to help defendant and urged him to get "his problem out and talk about it." Defendant said that he needed counseling. The officer testified at trial that defendant then explained what had happened:

"A. [BY POLICE OFFICER]: He told me he had taken a shower and come out of the shower and gone into the living room of his residence and sat on a couch.

"He told me that the victim * * * came — walked up to him. He told me he brushed some hair out of the victim's eyes and stood up, and he stated the towel that he had wrapped around himself came partly undone and that the victim placed his hands on the defendant's penis and then placed the defendant's penis in his mouth. He told me that contact lasted for one to two minutes.

"Q. What else did he say?

"A. He told me that this occurred in the month of May of 1982.

"Q. Did he tell you whether or not he thought that he was doing wrong or not?

"A. He told me he'd been bothered by it for a period of time and had some guilt feelings because of it and wanted to seek psychological help as a result of this."

The officer then advised defendant of his *Miranda* rights and conducted a taped interview in which defendant repeated the confession. Defendant immediately was arrested and charged with sodomy in the first degree. The tape was not used as evidence in the trial. Only defendant's verbal admission to the officer before the taping was admitted as evidence. In a trial to the court, he was found guilty.

The state's case at trial consisted of (1) defendant's oral confession to the officer made before *Miranda* warnings and (2) the victim's father's testimony relating the child's statements to him about the sexual contact. On appeal, defendant challenges the admission of both items of evidence.

■ We turn first to defendant's claim that his confession should be suppressed, because it was given without *Miranda* warnings and involuntarily as a result of an implied promise of beneficial treatment. Defendant claims that he was "in custody" from the moment he arrived at the police station, requiring the *Miranda* warnings immediately on his arrival, and that any statements he had made without the warnings should be suppressed. Although defendant cites the Oregon Constitution in his brief, he did not rely on it in the trial court. Accordingly, we consider only his federal constitutional claim.

There has been a good deal of confusion as to when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way" for the purpose of applying the rule in *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *See State v. Roberti,* 293 Or 236, 646 P2d 1341 (1982), *vacated and rem'd sub nom Oregon v. Roberti,* 468 US ___, 104 S Ct 3574, 82 L Ed 2d 873 (1984), *on remand former opinion withdrawn* 298 Or 412, 693 P2d 27 (1984); *State v. White,* 297 Or 302, 685 P2d 983 (1984). This confusion has subsided since the decision in *Berkemer v.*

*McCarty,* 468 US ___, 104 S Ct 3138, 82 L Ed 2d 317 (1984). There the Court announced the test for determining when there is "custodial interrogation" for *Miranda* purposes:

> "* * * A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation. * * *" 468 US at ___ (82 L Ed 2d at 336).

We are guided in our application of this standard by *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), and *State v. Fields,* 291 Or 872, 635 P2d 376 (1981). In *Mathiason,* the defendant, a suspect in a burglary, voluntarily presented himself at the police station in response to an officer's request. On his arrival at the station, the officer took him into a room, closed the door and informed him that he was not under arrest. The officer told the defendant that he believed that the defendant had been involved in a burglary and falsely represented that his fingerprints had been found at the scene of the crime. Five minutes into the investigation, the defendant confessed. The officer advised him of his *Miranda* rights, and he was released. He was later arrested and convicted of first degree burglary. The Supreme Court held that the confession was not obtained during custodial interrogation and was therefore admissible. The defendant voluntarily had come to the station and had left after the interview. The Court found that the circumstances did not prove that the defendant's freedom to leave was restricted in any way. The Court explained:

> "Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to

render him 'in custody.' It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." 429 US at 495. (Emphasis in original.)

In *Fields,* the defendant, on probation and suspected of auto theft, was asked by a police officer to accompany the officer to the probation office. He voluntarily complied. He was taken to a conference room, and the door was closed. The officer asked the defendant to respond to questions regarding the theft, making it clear that the defendant was not under arrest and not obligated to answer the questions. The officer detailed the car theft and the defendant's possible involvement in it, whereupon he confessed. He was arrested, advised of his *Miranda* rights and immediately transported to jail. Relying on *Oregon v. Mathiason, supra,* the court found that the questioning did not constitute a custodial interrogation giving rise to the requirements of *Miranda.*

"The only significant additional facts in this case are that the questioning took place in a probation office rather than in a patrol office and that defendant was arrested immediately after his confession, rather than being released and later arrested. We conclude that these facts do not suggest a different result under the precedent of *Mathiason.* Defendant was not in actual custody and, under these facts, there is no reason to conclude that he was otherwise deprived of his freedom of action in any significant way at the time of the questioning. We do not see subsequent release as the determining factor, since it sheds no light on whether custody existed before the point of confession." 291 Or at 876.

In this case, defendant, suspected of sodomy, voluntarily presented himself at the police station. He was taken to an unlocked room and asked questions in pursuit of an investigation. After the circumstances of the crime were outlined for him, he confessed. The only fact in this case different from *Mathiason* and *Fields* is that we are not told that the officer affirmatively stated that defendant was free to leave and was not under arrest, but the trial court's findings specifically address this issue. The court found that the credible evidence indicated that, at the time defendant gave the statement to the officers, he was free to leave and felt that he was free to leave.

The evidence in this case support the trial court's finding. The officer testified that defendant was free to leave

before he made the admissions. Defendant testified at the pretrial hearing that he did not think he was under arrest but did not think he was really free to go. He explained that there were "two or maybe three police officers out in the hallway, they wouldn't let me out of that room if I tried to get out of there." The trial judge was free to disbelieve defendant and to conclude that a reasonable person in defendant's position would not have felt that he was in custody. The trial court's conclusion that defendant was not in custody is supported by the findings and is consistent with the standard articulated by the Supreme Court in *Berkemer v. McCarty, supra.* The trial court did not err in admitting the statements at issue. *See also State v. Hickam,* 71 Or App 471, 692 P2d 672 (1984).

■     Defendant further contends that his confession was involuntary as the result of an implied promise of beneficial treatment and should be suppressed. Defendant acknowledged at the time of the confession and at the pretrial hearing that the officer did not threaten him or promise him anything to get him to talk.[1] We find no merit in this claim.

■     We turn now to defendant's claim that the trial court erred in admitting the following testimony by the victim's father in evidence against him:

"Q.     * * * On July 22nd of last year, did your son make a statement to you in regards to some sexual activity that he may have been involved in?

"A.     Yes, he did.

"Q.     Where was that made?

"A.     In my living room.

"Q.     Tell us what he said to you?

---

[1] Defendant testified:

"Q. [BY MR. GORHAM]: * * * Now here he says, 'Gary, has anyone made any threats or promises in connection with this statement?' And you say, 'No, sir.'

"Was that the truth?

"A. Yes, I remember saying, 'No, sir,' but I said no sir to a lot of things on the tape.

"Q. Okay. But what I'm trying to get at is, did he threaten you or promise you anything to get you to talk?

"A. No, sir."

"MR. FAGAN: We renew our objections to this testimony on the grounds previously litigated.

"THE COURT: Very well.

"Q. (By Mr. Gorham) Tell us what he said to you?

"A. He says, 'I sucked Gary's pee-pee.'

"Q. What does 'pee-pee' mean to your son?

"A. His penis."

Defendant objects to the admission of this testimony as substantive evidence, claiming that it constitutes hearsay inadmissible under OEC 802 and violates his rights under the federal and state Confrontation Clauses, because he was not able to cross-examine the child. The trial judge found that the evidence was admissible under the general residual exception set forth in OEC 803(24),[2] and we agree.

The victim's statement clearly is relevant to the case. The statement was offered to corroborate defendant's confession and was more probative on this point than any other evidence which the prosecution could reasonably procure. OEC 803(24)(a)(B) requires us to find that the hearsay statement is more probative, as corroboration of defendant's confession, than any other evidence available. Despite the general provision of OEC 803 that availability of the declarant is immaterial, the probativeness requirement seems to necessitate a finding in this case that the declarant was unavailable as a witness. *See United States v. Mathis,* 559 F2d 294, 299 (5th Cir 1977) (interpreting FRE 803(24)). The state conceded

---

[2] OEC 803(24) provides, in pertinent part:

"The following are not excluded by ORS 40.455 [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(24)(a) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

"(A) The statement is relevant;

"(B) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

"(C) The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence.

"* * * * *"

that the declarant was not competent as a witness because of his age, and defendant agreed to that. The declarant's incompetence renders him unavailable to testify at trial. *See State v. Bounds,* 71 Or App 744, 694 P2d 566 (1985); *State ex rel Gladden v. Lonergan,* 201 Or 163, 182, 269 P2d 491 (1954); *Haggins v. Warden, Fort Pillow State Farm,* 715 F2d 1050, 1055 (6th Cir 1983) *cert den* ___ US ___ 104 S Ct 980 (1984); *Ellison v. Sachs,* 583 F Supp 1241 (D Md 1984); *People v. Orduno,* 80 Cal App 3d 738, 145 Cal Rptr 806 (1978), *cert den* 439 US 1074 (1979).

This hearsay is admissible under OEC 803(24), because it has "equivalent circumstantial guarantees of trustworthiness" to those of the specific exceptions of Rule 803. The victim in this case was a three-year-old boy. The child had no known sexual experiences before the incident and had not been known to fabricate stories. His remark was spontaneous, while playing at home with his father, and was not occasioned by direct or indirect questioning by his parent. The child repeated the statement to his father, and the police officer and demonstrated the act to the police officer by placing the penis of an anatomically correct male adult doll up to the mouth of a child doll.

In the preliminary hearing, the state presented testimony by a pyschologist who had observed approximately 100 cases involving sexually abused children. He testified that his experience and his examination of the victim led him to conclude that the child's statements were credible.[3] He noted that the victim was a verbally bright and sexually normal child, who exhibited no emotional disturbance or psychosis. The child's father testified that defendant was the only person named "Gary" that the child knew. The child had been at defendant's home while defendant's wife provided child care for him, creating ample opportunity. There is nothing whatsoever to indicate that the child had any inclination, reason or ability to fabricate the accusation. Admission of the testimony serves the general purposes of the OEC and the interests of justice. The trial court did not err in admitting evidence of the

---

[3] In *State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983), the Supreme Court held that a witness, expert or otherwise, may not give an opinion on whether she or he believes a witness is telling the truth. The admission of the psychologist's testimony in the preliminary hearing is not raised as error.

child's statement to his father under OEC 803(24). *See State v. Bounds, supra; State v. Hollywood,* 67 Or App 546, 680 P2d 655 (1984).[4]

■ ■   Defendant also claims that the admission of the evidence violates his rights under the federal and state Confrontation Clauses, because he was not able to cross-examine the child.[5] Under *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), we must consider the state constitutional claim before we can reach the issue of whether defendant was denied rights guaranteed by the federal constitution. Although the two clauses are worded somewhat differently, the Supreme Court has never interpreted them to require different analyses. *See State v. Farber,* 295 Or 199, 207 n 10, 666 P2d 821 (1983); *State v. Herrera,* 286 Or 349, 594 P2d 823 (1979); *see also State v. Conway,* 70 Or App 721, 690 P2d 1128 (1984). Defendant asserts no reason why the difference in wording should be significant in the circumstances of this case, or that there is an analysis that is preferable to that which the United States Supreme Court had applied. We perceive no reason to accord broader protection under the Oregon Constitution than is available under the federal constitution. Accordingly, we

---

[4] Defendant argues that the hearsay statement is not admissible by reason of OEC 803(18a), which provides:

"The following are not excluded by section 63 (Rule 802) of this Act, even though the declarant is available as a witness:

"* * * * *

"(18a) Complaint of sexual misconduct. A complaint of sexual misconduct made by the prosecuting witness after the commission of the alleged offense. Such evidence must be confined to the fact that the complaint was made."

OEC 803(18a) excludes the substance of an out-of-court complaint of sexual misconduct only when the statement is offered as consistent or inconsistent with the testimony of a prosecuting witness, *i.e.,* the victim who testifies in court. OEC 803(18a) has no application when, as in this case, the declarant is not a prosecuting witness because she is incompetent to testify in court.

[5] Article I, section 11, of the Oregon Constitution provides, in pertinent part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

The Sixth Amendment to the U.S. Constitution provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

The federal right of confrontation applies in state trials as part of due process under the Fourteenth Amendment. *Pointer v. Texas,* 380 US 400, 85 S Ct 1065, 13 L Ed 2d 923 (1965).

apply the same analysis to resolve both constitutional claims.

■ The rule against hearsay and the Confrontation Clause serve the same purpose of ensuring reliability in the factfinding process and reflect a preference for testimony subject to cross-examination; however, cross-examination of the hearsay declarant either at the time the statement was made or at trial is not essential to overcome an objection based on the Confrontation Clause. *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980); *State v. Farber, supra.*

The most recent pronouncement by the United States Supreme Court sets out a two-tiered analysis for the admissibility of hearsay despite the Confrontation Clause:

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. * * *

"The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' Snyder v. Massachusettts, 291 US [97], at 107, 78 L Ed 674, 54 S Ct 330, 90 ALR 575 [1934]. * * *

"* * * * *

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts, supra,* 448 US at 65-66. (Footnotes omitted; citations omitted.)

■ The first requirement is satisfied here, because the declarant was unavailable, as discussed above. To satisfy the second test, because the hearsay was not admitted under a

"firmly rooted hearsay exception," there must be "particularized guarantees of trustworthiness" of the statement. 448 US at 66. *United States v. Nick,* 604 F2d 1199, 1203 (9th Cir 1979), holds that Rule 803(24) "provides a useful set of criteria" to weigh evidence for admissibility over a Confrontation Clause objection. The court was careful to qualify that statement in *United States v. Perez,* 658 F2d 654, 661 n 6 (9th Cir 1981), by stating that Rule 803(24) may provide "a convenient supplementary guidepost to confrontation clause analysis without [being] a test of general application." *See also State v. Echeverria,* 51 Or App 513, 626 P2d 897, *rev den* 291 Or 118 (1981).

Satisfaction of the requirements of OEC 803(24) establishes the reliability of the statement in this case. The victim's statements to his father and to the police were consistent. Defendant has offered no reason why we should doubt the trustworthiness of the victim's statements. Under these circumstances, we conclude that the admission of the victim's father's testimony did not violate the confrontation rights of defendant.[6]

In his final assignment of error, defendant claims that the trial court erred in denying his motion for judgment of acquittal, because the father's testimony regarding the victim's statement is not adequate evidence to corroborate defendant's confession under ORS 136.425(1):

> "A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against him when it was made under the influence of fear produced by threats; nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed."

■ Defendant claims that the child's hearsay statement, as related by his father's testimony, should not be relied on, because it was bolstered by defendant's confession. We do not

---

[6] Defendant urges that we hold that, under the Oregon Constitution, in any case when a declarant is incompetent to testify as a witness because of his age, the declarant's statements are inadmissible as a matter of law, regardless of whether the federal test of reliability is met. Whatever difference there is in the wording of the state and federal clauses guaranteeing the right of confrontation, we see no basis for accepting defendant's argument for a *per se* rule of exclusion. We hold that there is sufficient evidence of trustworthiness of the statements to satisfy the Oregon Constitution's guarantee of confrontation.

agree. The fact that the statement was corroborated in every significant detail by defendant's valid confession may add to the weight given to the hearsay, but does not establish its admissibility. Where, as here, only hearsay corroborates a defendant's confession, it must meet the requirements of OEC 803(24) without relying on the confession. We are satisfied that the child's statement was reliable and could be admitted under OEC 803(24), independently of the confession in this case. We conclude that the trial judge was correct in finding that the father's testimony relating the child's statements to him about the sexual contact was enough evidence from which a factfinder could draw an inference that tends to establish that a crime had been committed, as is required by ORS 136.425(1), to corroborate defendant's confession. *See State v. Lerch,* 296 Or 377, 398, 677 P2d 678 (1984).

Affirmed.