Argued and submitted August 24, 2001, reversed and remanded February 27, 2002

# STATE OF OREGON,
*Appellant,*

*v.*

# DARYL BARBER,
*Respondent.*

## 00C42159; A111533

41 P3d 455

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Brewer, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

**LANDAU, P. J.**

The state appeals a pretrial order granting defendant's motion to suppress statements made following a waiver of *Miranda* rights on the ground that defendant failed "intelligently" to waive those rights. We reverse and remand.

The following facts are not in dispute. Marion County Sheriff's Deputy Nicoloff received a report from a 14-year-old girl that she and defendant, her 19-year-old boyfriend, had engaged in sexual intercourse. Nicoloff called defendant on the telephone and asked him to come to the police station to talk. Defendant agreed to meet at the station later that day.

Defendant arrived at the station with his father, albeit an hour after he had told Nicoloff that he would be there. Nicoloff invited defendant into the interview room; defendant's father waited outside. At the beginning of the interview, Nicoloff read defendant his *Miranda* rights and had defendant sign the back of a *Miranda* card indicating that he understood and waived those rights. Nicoloff then questioned defendant about his relationship with his girlfriend. Defendant admitted to engaging in sexual intercourse with her. At the end of the 20-25 minute interview, defendant made the comment: "I'm retarded." Nicoloff asked defendant what he meant, and defendant replied that he had difficulty reading and that he stuttered. At no time during the interview did defendant ask to leave or ask for his father to be present.

Defendant was charged with third-degree sexual abuse and contributing to the delinquency of a minor. He filed a motion to suppress, arguing that, because of his retardation, he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. At the hearing on the motion, his case manager testified that defendant has an IQ of 61, which puts him in the range of "mild" retardation, that he cannot read beyond the first grade level, and that he has a limited ability to understand abstract principles and to "project out into the future." Defendant also testified. He stated that "[n]o one told me that I had to talk to [Nicoloff] or nothing" and that "I didn't have to talk to him, but I went in and talked to

him anyhow." He stated that he knew that he could have left the interview but that he also thought he was going to be arrested. He also said that he wanted to leave but did not do so.

The state argued that whether defendant validly waived his *Miranda* rights is beside the point. According to the state, defendant was not in custody or under compelling circumstances, so *Miranda* warnings were not even required. In the alternative, the state argued that defendant in fact knowingly, intelligently, and voluntarily waived those rights.

The trial court granted defendant's motion, finding as follows:

> "* * * [Nicoloff] made no mistake that I can see. His conduct was right [all] along. My only comment would have been that he might have inquired a little further into [defendant's] intelligence and his ability to understand. But I find that he made no mistake at all; there's no misconduct or no mistake.

> "But I do find that under the circumstances of the contact, that—and especially considering the IQ of the defendant, that I think the defendant probably thought he was in custody, and so therefore, I do find that *Miranda* was required under these circumstances.

> "As to the second question, I relied heavily upon the defendant's responses to questions on the witness stand, and also his counselor's testimony with respect to his history of being able to understand matters that come to his attention. So I do find that he—and I think I stressed the word 'intelligently' when I made my conclusion, and that he may have been voluntary and may have been responsive, but I find that [he] lacked the necessary intelligence for him to have been adequately warned of his rights."

On appeal, the state argues that the trial court erred in concluding that the interview amounted to custodial interrogation. In the alternative, the state argues that defendant, in fact, intelligently waived his *Miranda* rights. Because we agree with the state on the first argument, we need not address the second.

Under Article I, section 12, of the Oregon Constitution, *Miranda* warnings are required when a defendant

either is "in custody" or in a setting that, even if not custody as such, nevertheless is "compelling." *State v. Goree*, 151 Or App 621, 636, 950 P2d 919 (1997), *rev den* 327 Or 123 (1998). The rationale for the requirement is that individuals should not be put into situations in which they are likely to feel psychologically compelled to testify without the benefit of a clear warning that they do not have to do so. *Id.* at 636-37. Whether a given setting amounts to custody or is compelling is a question of law. *State v. Werowinski*, 179 Or App 522, 529, 40 P3d 545 (2002).

We first consider whether defendant was in custody. Our decision in *State v. Hickam*, 71 Or App 471, 692 P2d 672 (1984), is close in point. In that case, the defendant, who was "significantly retarded," was suspected of having committed sexual abuse. The officer asked the defendant to go to the police station for questioning; the officer told the defendant that he was not required to go. The defendant agreed to go. At the station, the officer interviewed the defendant in a small, windowless room with the door closed. After the defendant admitted to the sexual abuse, the officer gave him *Miranda* warnings, and the state charged him with sexual abuse. The defendant moved to suppress on the ground that he had made the admission while "in custody" without having been given *Miranda* warnings. He contended that he functioned at the level of an eight- to ten-year-old and that he did not feel that he was free to leave the police station. The trial court denied the motion to suppress, and we affirmed, explaining that: (1) the defendant had voluntarily accompanied the officer to the station; (2) the detention was brief, taking less than one hour; (3) the defendant's freedom of movement was not restrained in any way; (4) although the defendant subjectively may have believed that he could not leave, nothing in the record suggested that he was justified in so believing. *Id.* at 476.

In this case, too, defendant voluntarily went to the station for brief—20 to 25 minutes questioning. His freedom of movement was not restrained in any way. And, although the trial court found that defendant "probably" subjectively believed that he was not free to go, that is not determinative. The question is whether anything in the record suggests that defendant was reasonable in so believing. In this case, as in

*Hickam*, there is evidence of retardation. But, also as in *Hickam*, there is nothing in the record to suggest that even an individual in those circumstances reasonably would have understood that he or she was not free to leave.

■ We turn to whether defendant nevertheless was in "compelling" circumstances. The relevant inquiry is whether a reasonable person in the suspect's position would have understood the circumstances to be compelling. *Werowinski*, 179 Or App at 529 (citing *State v. Clem*, 136 Or App 37, 42, 900 P2d 1064 (1995) (under federal constitution, whether circumstances are compelling depends on how a reasonable person would have understood the situation)).

In this case, as we have noted, defendant was asked to come to the police station for questioning. He was not told that he had to come. Defendant agreed to the interview, set an appointment, and then arrived an hour late. He was taken to an interview room, where he was questioned briefly. He never asked to leave. In fact, he testified that he understood that he did not have to attend the interview and that he was free to leave. The trial court nevertheless found that, because of defendant's low IQ, he "probably" did not understand that he was free to leave. That, however, is not the end of the inquiry. As we have noted, the determinative question is whether a defendant in the foregoing circumstances *reasonably* would understand that he or she was not free to leave. In this case, assuming that defendant subjectively believed that he could not leave, nothing in the record suggests that the belief was reasonable. Although he had a low IQ, there is no evidence that he lacked the ability to appreciate fully his ability to leave. *See Hickam*, 71 Or App at 476.

Reversed and remanded.