Argued and submitted July 19, affirmed December 8, 2004, petition for review denied March 22, 2005 (338 Or 363)

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL JOHN BRUMMER,
*Appellant.*

20-01-08622B, 20-01-11391;
A116846 (Control), A116847
(Cases Consolidated)

102 P3d 695

Andrew S. Chilton and Chilton & Ebbett, LLC, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, David J. Amesbury, Assistant Attorney General, and Celeste Mountain, Certified Law Student, filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction on charges of conspiracy to commit rape in the first degree, ORS 163.375, conspiracy to commit sexual abuse in the first degree, ORS 163.427, and 11 counts of theft in the first degree, ORS 164.055. He contends that the trial court erred in denying his motion to suppress incriminating statements that he made to police after waiving his right to remain silent. He argues that, at the time that he initially made those statements, he was in custody and was therefore entitled to receive *Miranda* warnings. He also argues that, when he later made the same statements after receiving *Miranda* warnings and waiving his right to remain silent, he was incapable of making a knowing and voluntary waiver of his rights because of mental retardation. We affirm.

The facts are undisputed. On April 12, 2001, Officer Rappe contacted defendant at defendant's home to investigate his involvement in a burglary and theft of firearms at a nearby residence. Before discussing that incident, Rappe gave defendant *Miranda* warnings, which defendant indicated he understood. Defendant then admitted his involvement with an accomplice in the burglary and theft. Defendant stated that he waited outside the house and took the guns from his accomplice as he passed them out a window. Defendant was later charged with burglary and theft based on his involvement in that incident.

On April 29, 2001, police again contacted defendant in the course of investigating another reported burglary. The officers did not give defendant *Miranda* warnings. Defendant told the officers that he had initially agreed to assist an accomplice with entering the home and raping Taylor, a woman who lived there, and that he had been at the home with the accomplice but had remained outside while the accomplice entered the house intending to rape Taylor. He also said that he had fled the scene when his accomplice entered the home. Police arrested defendant and transported him to the police station.

At the police station, Officer Zeltway advised defendant of his *Miranda* rights. Zeltway asked defendant if he

understood those rights, and defendant indicated that he did. Upon questioning, defendant stated that he had agreed to enter the home through an unlocked door and rape Taylor, but that he ran away because he "didn't want another burglary charge." After the interview, defendant was cited and released.

On May 9, 2001, detectives Herbert and Braziel arrested defendant for the April 29 burglary. As they escorted defendant to their vehicle, Herbert started to read defendant his rights, but defendant interrupted, saying, "I don't want a lawyer." Herbert again read the *Miranda* warnings to defendant and asked him if he understood those rights. Defendant said that he did and reiterated that he did not want a lawyer. The detectives had defendant transported to the police station.

At the station house, Herbert interviewed defendant about the April 29 burglary and attempted rape. Defendant gave a very detailed account of his accomplice's plans to break into the house and rape Taylor. Defendant said that he had agreed to the plan and had suggested cutting the phone line to the house. Defendant drew a diagram of the house and explained that the two had circled the house a number of times, looking into the windows; that they had waited across the street for a period of time to observe the home; that shortly thereafter Taylor arrived at the home and went inside; and that, at that point, the two approached the home intending to break in and rape Taylor. Defendant then stated that, as his accomplice entered the house, he had second thoughts and ran away.

■    The charges arising from the two separate incidents were consolidated for trial on defendant's motion. Defendant filed a pretrial motion to suppress the incriminating statements that he had made to police, arguing that the statements made to the officers on April 29 should be suppressed because he had not been given *Miranda* warnings. He also argued that his other statements—made after delivery of *Miranda* warnings—should be suppressed because his low IQ, mental age, and limited education rendered him incapable of making a knowing, voluntary, and intelligent waiver of his right to counsel and his right to remain silent.

At the hearing on defendant's motion, he called Dr. McConochie, a licensed clinical psychologist, who testified that defendant had a full-scale IQ of 67 and that defendant was mildly mentally retarded with the mental age of an 8-year-old. Regarding defendant's ability to understand the *Miranda* warnings and his waiver of rights, McConochie opined that defendant "doesn't really understand the * * * overall issues of how the law works and being accused of something and protecting [himself] in a legal proceeding." McConochie also spoke of his conversations with defendant, in which defendant explained that he had told the police that he did not want a lawyer because he thought that he could "beat" the charges without one. Defendant told McConochie that he thought he would be found not guilty because he was not the one who broke into the house and he was not the one who committed the rape.

Defendant also testified. He stated that he understood the right to remain silent, explaining that it meant, "[Y]ou don't have to talk if you don't want to." When he was asked why he might want an attorney, he replied that an attorney could help him win the case.

The state offered the testimony of Officer Thomsen, who had previously arrested defendant following an unrelated incident. Thomsen testified that, at the time of that arrest, defendant had confessed to his involvement in an automobile theft after being read the *Miranda* warnings and then indicated that he did not wish to speak further with the officer without an attorney present.

The trial court denied defendant's motion to suppress. Among other things, it found that,

"[w]hen *Miranda* rights were read to the defendant * * * the defendant understood enough to comprehend them, given the instances in which he waived *Miranda* rights and, on at least one other occasion[,] when he invoked the *Miranda* rights and claimed the benefit of them. His definitions of burglary and rape demonstrate an adequate fund of knowledge about at least those criminal behaviors. And while he may not understand some things, he understands these processes and these procedures adequately."

As noted, defendant was eventually convicted of conspiracy to commit rape in the first degree, conspiracy to commit sexual abuse in the first degree, and 11 counts of theft in the first degree.

On appeal, defendant first argues that the trial court erred in denying his motion to suppress statements he made before being given *Miranda* warnings on April 29. The state argues that, even if the officers should have given defendant *Miranda* warnings at that time, the fact remains that they later did give the proper warnings to defendant, after which he repeated the same incriminating statements. On appeal, defendant does not argue that those later statements were somehow tainted by the earlier questioning. We therefore reject defendant's first assignment without further discussion.

■　　　　Defendant next argues that the trial court erred in denying the motion to suppress the statements made after delivery of the *Miranda* warnings, renewing his argument that, because of his low IQ, mental age, and lack of education, he was incapable of making a knowing, intelligent, and voluntary waiver of his rights to counsel and to remain silent. The state counters that there is adequate evidence in the record to support the trial court's finding that defendant understood the nature of the rights and the effect of his waiver, and that this court is bound by that finding of fact. We agree with the state.

■　　　　We review the trial court's denial of a motion to suppress for errors of law, and we are bound by its findings of fact when those findings are supported by constitutionally sufficient evidence. *State v. Williams,* 191 Or App 270, 272, 81 P3d 743 (2003). In determining whether a defendant's waiver of rights was knowing and voluntary, we "must inquire into the totality of the circumstances surrounding the * * * police interrogations to determine whether the defendant in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel." *State v. McCoy,* 165 Or App 499, 506, 998 P2d 709, *rev den,* 331 Or 193 (2000) (citation omitted). The mere fact of mental retardation or other mental deficiency does not, by itself, mean that an individual cannot knowingly and voluntarily waive

his or her constitutional rights. *See id.* at 504-06 (confession held voluntarily given despite perceived mental deficiencies when defendant communicated with the officers in a coherent and responsive manner); *State v. Hickam*, 71 Or App 471, 477-78, 692 P2d 672 (1984) (confession voluntary in spite of evidence of mental retardation when defendant understood the nature of the investigation and responded appropriately to questions).

In this case, the trial court found that defendant understood the *Miranda* warnings and the proceedings in which he found himself involved. There was evidence in the record to support that finding. Defendant indicated to police, after being given the warnings and asked whether he understood them, that he did. When asked at the suppression hearing what it meant to have the right to remain silent, defendant stated that it meant that "you don't have to talk if you don't want to." Furthermore, defendant had had a significant amount of contact with police, was able to define in basic terms both rape and burglary, and was able to describe in basic terms how an attorney could assist him in the legal process.

Moreover, in a previous incident with police, defendant had invoked his right to remain silent and his right to speak with an attorney. That invocation of rights indicates that defendant understood the nature of his rights and the effect of invoking them. In sum, we agree with the trial court's conclusion that defendant's waiver of rights was knowing, voluntary, and intelligent. The trial court did not err in denying defendant's motion to suppress.

Affirmed.